ESTATE OF DUDLEY S. BLOSSOM, DECEASED, CARL W. BLOSSOM, DUDLEY S. BLOSSOM, JR., AND D. LEE SELOVER, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 105266.   Promulgated November 12, 1941.

*Sterling Newell, Esq.*, for the petitioners.
*Stanley B. Pierson, Esq.*, for the respondent.

### OPINION.

TURNER: The respondent determined a deficiency in estate tax in the amount of $107,088.05.   The issues are (1) whether the respondent erred in determining the fair market value of certain shares of stock in the Nestle Le Mur Co. at the time of the decedent's death; (2) whether there should be deducted from the gross estate certain expenses incurred in the administration and distribution of the estate; and (3) whether there should be deducted from the gross estate certain bequests to charitable, educational, and religious institutions.

The case was submitted upon a written stipulation of facts, together with certain exhibits, which we adopt as our findings of fact and shall recite only such facts as may be required in discussing the issues. No brief has been filed by the respondent.

The decedent, Dudley S. Blossom, died estate aand a resident of Cuyahoga County, Ohio, on October 7, 1938, survived by his widow, Elizabeth B. Blossom and two children, Dudley S. Blossom, Jr., and Mary Blossom Gale.   The petitioners are the executors of his estate. They filed an estate tax return on December 21, 1939, with the collector for the eighteenth district of Ohio at Cleveland.

At the time of his death the decedent owned 1,500 shares of Nestle Le Mur class A stock and a promissory note from John T. Blossom secured, *inter alia*, by 5,415 shares of Nestle Le Mur class A stock. Petitioners concede that this stock constituted a part of the decedent's estate and the question in dispute is the fair market value thereof.

This stock was listed on the Cleveland Stock Exchange and on the New York Curb Exchange during the entire year of 1938. Trading on the Cleveland Stock Exchange aggregated approximately 3,817 shares and on the New York Curb Exchange approximately 4,600 shares. On October 7, 1938, the bid price in Cleveland was ⅜ and the asked price was ½; and in New York the bid price was ⁷⁄₁₆ and the asked price was ⅞.

In the estate tax return the petitioners reported the 1,500 shares at ⁷⁄₁₆ per share and the 5,415 shares at ⅜ per share. The respondent increased the value stating in the notice of deficiency that the stock had been valued in conformity with the provisions of article 10, Regulations 80 (1937 Edition). That article provides that "In case securities are quoted on a bona fide bid and asked basis, and actual sales are not available, the mean between the bid and asked prices as of the applicable date * * * will be accepted as the value", and that "If the security was listed upon more than one exchange, the record of the exchange where the security is principally dealt in should be employed."

The petitioners now contend that, since the stock had a real and effective market on two exchanges with a volume of trading substantially equal on each exchange, its fair market value should be determined by taking the mean between the highest bid price on either exchange and the lowest asked price on either exchange; further that any method of valuation which excludes the dealings on one exchange from any consideration because transactions are in slightly greater volume on another exchange, as suggested by the respondent, is arbitrary and achieves a result which does not reflect actual market conditions.

We think the petitioners' contention must be sustained. There doubtless would be some cases where the fair market value of a security could be more nearly approximated by taking the mean between the bid and asked prices on the exchange where the security is "principally dealt in," but we do not think that rule should be applied here, because there was comparatively little difference between the volume of trading in the stock on the two exchanges and under such circumstances we believe that the closest approximation of its fair market value could be determined by taking the mean between the highest bid and the lowest asked on the two exchanges. This method should be used in the recomputation of the deficiency.

The next question is whether the petitioners are entitled to deduct, under section 303 (a) (1) (B) of the Revenue Act of 1926, as amended by section 805 of the Revenue Act of 1932, the sum of $9,220.60 as administration expenses.

There was an insufficiency of cash in the decedent's estate to satisfy the cash legacies contained in his will and it was necessary for the executors to sell certain securities to obtain cash for that purpose. The expenses in question represented the brokerage charges on the sales of such securities, including transfer charges and commissions. Such expenses have been used to diminish gain and increase losses in computing the Federal income taxes of the estate since the date of the decedent's death. Respondent filed no brief, but his counsel stated at the hearing that it had not been "definitely shown" that the expenses were incurred in connection with the administration of the estate. We think it has been shown, and we hold that such expenses are deductible. See article 35 of Regulations 80 and *Estate of Henry E. Huntington*, 36 B. T. A. 698.

The last issue is whether petitioners are entitled to deduct from the gross estate certain bequests to charitable, educational, and religious institutions. In his will the decedent made various cash bequests, among which were $100,000 to his wife, $100,000 to each of his two children, and in items IV, V, and VI he made cash bequests aggregating $500,000 to be placed in perpetual trust for the benefit of certain institutions which the respondent concedes are religious, charitable, and educational institutions within the meaning of section 303 (a) (3) of the Revenue Act of 1926, as amended.

Item IX of the decedent's will provides:

Item IX. I have made numerous gifts in this my will for charitable, religious, benevolent or educational purposes. In the event of my death within a year from the date of the execution of my will, I hereby authorize and empower my son, DUDLEY S. BLOSSOM, JR., and my daughter, MARY BLOSSOM GALE, or the survivor of them, to ratify and confirm each and every bequest hereinabove made to or for the use of charitable, religious, benevolent or educational purposes, and I desire and request that my said children, or the survivor of them, ratify and confirm each such bequest.

In the event my said son and daughter, or the survivor of them, shall fail to ratify any or all such bequests, and in the further event that such bequests shall be invalid because of my death within one year from the date of execution of my will, I give all such invalid legacies to my wife, ELIZABETH B. BLOSSOM, to be hers' absolutely.

The decedent executed his will on December 20, 1937, and died on October 7, 1938. Section 10504–5 of the Ohio General Code provides that "If a testator dies leaving issue of his body * * * living * * * and the will of testator gives, devises or bequests the estate of such testator or any part thereof to a benevolent, religious, educational or charitable purpose, * * * such will as to such gift, devise

or bequest shall be invalid unless it was executed according to law, at least one year prior to the death of the testator."

The decedent's will was probated on October 17, 1938, and on the same day, Dudley S. Blossom, Jr., and Mary Blossom Gale, decedent's only issue surviving him, executed an instrument ratifying and confirming the above mentioned bequests, which instrument provided, after preliminary recitals, as follows:

Now, therefore, we, DUDLEY S. BLOSSOM, JR., and MARY BLOSSOM GALE, and each of us, the children and only lineal descendants of said Dudley S. Blossom, in execution of the authority and power conferred upon and vested in us and each of us by said Dudley S. Blossom in and by his said Last Will and Testament, to ratify and confirm the said bequests to Central National Bank of Cleveland, in trust, for the benefit of the institutions whose names appear in Items IV, V and VI of said will, and in consideration of the premises and of the sum of One Dollar ($1.00) paid to each of us by said Central National Bank of Cleveland, the receipt whereof is hereby acknowledged, do hereby ratify and confirm each and every one of the bequests to Central National Bank contained in Items IV, V and VI of the will of said decedent, in trust, however, for the uses and purposes and upon the conditions set forth in Items IV, V and VI of said decedent's will, and we, and each of us, do appoint to said Central National Bank the sum of Five Hundred Thousand Dollars ($500,000) in trust, however, for the uses and purposes, and upon the conditions set forth in Items IV, V and VI of said decedent's will or such part of said sum of $500,000 bequeathed by Items IV, V and VI of said decedent's will as we can or may appoint as aforesaid.

On November 11, 1940, the decedent's executors filed in the Probate Court a "Petition for Construction of Will and for Instructions of the Court," naming as defendants the Central National Bank of Cleveland (trustee under items IV, V, and VI of the decedent's will) and the decedent's surviving wife and two children. The petition recited that the defendants were the only persons having or could have an interest in items IV, V, VI or IX of the decedent's will; that the decedent's sole surviving issue, defendants, Dudley S. Blossom, Jr., and Mary Blossom Gale, had ratified and confirmed the bequests contained in items IV, V, and VI of the decedent's will; that the legatees named in items IV, V, and VI have been paid their pro rata share of all distributions made to date; that they still had in their possession funds of the estate for distribution; and that a controversy had arisen as to the persons entitled thereto under the provisions contained in items IV, V, VI, and IX of the decedent's will, and then asked the court to construe the provisions of the will in question, together with the ratification and confirmation executed by the decedent's son and daughter, to determine the rights and interests of the defendants and to give direction and judgment as to the proper disposition of the estate remaining in their hands.

On December 16, 1940, the Probate Court ruled upon the questions raised by said petition. The journal entry of the court recites the joinder of all necessary parties to the proceeding, the jurisdiction of

the court in the premises, and the existence of the controversy with respect to the construction of decedent's will, and then reads in part as follows:

It further appearing to the Court that the action of decedent's sole surviving issue of the body in ratifying and confirming the charitable, benevolent, religious and educational bequests contained in Items IV, V and VI of decedent's will, in view of the express provisions of Item IX of said Decedent's will nullifies the effect of Section 10504-5 of the Ohio General Code so that Items IV, V and VI of the will of said decedent are valid and effective and the Executors should, therefore, carry out the terms of Items IV, V and VI of said decedent's will, and

It further appearing to the Court that said Executors have in their possession assets of the Estate and are in doubt as to whether the same should be distributed to the legatees named in Items IV, V and VI or to said Elizabeth B. Blossom.

It Is, Therefore, Ordered, Adjudged and Decreed, that:

(1) The provisions of items IV, V and VI of said decedent's will are valid and effective to give the Central National Bank of Cleveland in trust for the respective beneficiaries named therein the amounts bequeathed to said bank by such items of decedent's will, and neither said decedent's issue nor said decedent's widow have or had any interest whatever in the property bequeathed by said Items IV, V and VI of decedent's will.

(2) Carl W. Blossom, Dudley S. Blossom, Jr., and D. Lee Selover, Executors of the Estate of Dudley S. Blossom, Deceased, be and they hereby are ordered and instructed to pay to Central National Bank of Cleveland as Trustee the respective amounts bequeathed to said bank by Items IV, V and VI of the will of Dudley S. Blossom, Deceased, in accordance with the terms of decedent's will but subject to such abatement as may be necessary on account of insufficiency of assets to pay the legatees named in decedent's will in full.

No appeal has been taken from the order of the Probate Court and the time for appeal has expired.

The legacies contained in decedent's will have not been paid in full, as the assets of the estate are insufficient, but the executors have paid the institutions named in items IV, V, and VI the same percentages thereof as has been paid the other legatees.

Petitioners contend that the law of the State of Ohio controls the construction of the decedent's will and the effect thereof, that under Ohio law, as established by the Supreme Court of that state, *Thomas* v. *Board of Trustees of Ohio State University*, 70 Ohio St. 92; 70 N. E. 896, and as applied in the instant case by the court having jurisdiction over the decedent's estate, the prompt action of the decedent's children in ratifying the will overcame and nullified the Ohio Mortmain Statute (sec. 10504-5) so that the property passed under the decedent's will to the institutions in question, and, further, that the instant case is identical with *First National Bank of Atlanta et al., Executors*, 36 B. T. A. 491; affd., 102 Fed. (2d) 129, wherein it was held that the charitable bequests passed under the decedent's will and were deductible from his estate. The respondent contends that the last case cited is distinguishable in that the person waiving the rights

and ratifying the provisions of the will had an interest in the specific bequest, whereas here the bequest would go to the decedent's widow in the event the decedent's children did not ratify the bequests in question. He contends that here the property passed by virtue of the exercise by the decedent's children of a special power of appointment, instead of passing under the decedent's will. He cites no authority in support of his contentions.

On questions of this nature we are bound by the state law. *Blair* v. *Commissioner*, 300 U. S. 5; *Smith* v. *Commissioner*, 78 Fed. (2d) 897; and *First National Bank of Atlanta et al., Executors, supra.* The Probate Court of Cuyahoga County, Ohio, the court having jurisdiction over the administration of the decedent's estate and the construction of his will, held that the action of the decedent's children in ratifying and confirming the bequests in question "nullifies the effect of section 10504–5 of the Ohio General Code so that items IV, V and VI of the will of said decedent are valid and effective and the Executor should, therefore, carry out the terms of items IV, V and VI of said decedent's will, * * * and neither said decedent's issue nor said decedent's widow have or had any interest whatever in the property bequeathed by said items IV, V and VI of the decedent's will." It is thus apparent that under the law of Ohio the property in question passed to the charitable and educational institutions under the terms of the decedent's will. This brings the case within the principle enunciated in *First National Bank of Atlanta et al., Executors, supra.* While there is a slight factual distinction between that case and the instant case, we do not think it is material. We hold that the respondent erred in disallowing the deductions. See *Humphrey* v. *Millard,* 79 Fed. (2d) 107, and *Dimock* v. *Corwin,* 99 Fed. (2d) 799.

*Decision will be entered under Rule 50.*