COMMERCE TRUST COMPANY and Robert W. Willits, Executors of the Estate of William G. Parrott, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 17400-1.

United States District Court, W. D. Missouri, W. D.

Oct. 28, 1969.

Frank H. Terrell, Kansas City, Mo., for plaintiffs.

Calvin K. Hamilton, U. S. Atty., Kansas City, Mo., Eugene D. Silverman, Tax Division, Dept. of Justice, Washington, D. C., for defendant.

MEMORANDUM OPINION

JOHN W. OLIVER, District Judge.

I.

This action for refund of federal income taxes pends on separate motions for summary judgment filed by the respective parties. The factual situation is conceded to be undisputed.

The following allegations of plaintiffs' complaint are admitted by the Government's answer:

1. This is a civil action against the United States for the recovery of internal revenue taxes, to-wit: Federal income taxes, and interest thereon [alleged to have been] erroneously and illegally assessed and collected under Chapter 1 of the Internal Revenue Code of 1954, U.S.C., Sec. 1, et seq. Plaintiff Commerce Trust Company is a banking corporation organized under Missouri law with its principal place of business in Kansas City, Missouri. Plaintiff Robert W. Willits resides in Kansas City, Missouri, which is within the Western Division of the Western Judicial District of Missouri.

2. William G. Parrott died on November 29, 1965. Pursuant to the provisions of his duly-probated will, plaintiffs were appointed executors of said decedent's estate by order of the Probate Court of Jackson County, Missouri. Said appointment of plaintiffs, and the Letters Testamentary issued by said Probate Court evidencing same, are still in full force and effect.

3. The books and records of said estate have been maintained by plaintiffs, and Federal income tax returns have been filed for said estate, on the basis of fiscal years ending each June 30.

4. During the fiscal year commencing November 29, 1965 and ending June 30, 1966, in the course of administering said decedent's estate and pursuant to appropriate orders of said Probate Court plaintiffs sold certain stocks and securities of said estate in order to provide cash for the payment

of taxes and administration expenses. The expenses of said sales were $2,562.82, which expenses were incurred and paid by plaintiffs during said fiscal year.

5. During the fiscal year commencing July 1, 1966 and ending June 30, 1967, in the course of administering said decedent's estate and pursuant to appropriate orders of said Probate Court plaintiffs sold certain stocks and securities of said estate in order to provide cash for the payment of taxes and administration expenses. The expenses of said sales were $26,154.64, which expenses were incurred and paid by plaintiffs during said fiscal year.

6. [Covered by affidavit.]

7. In computing the Federal income tax liability of said estate for the fiscal years ending June 30, 1966 and June 30, 1967, and particularly the capital gains and losses for said years, plaintiffs took into account the aforesaid selling expenses for said years, subtracting the aforesaid selling expenses, together with the bases of the stocks and securities sold, from the amounts received from such sales in order to arrive at the capital gains or losses resulting from said sales.

8. The District Director of Internal Revenue, by and through his duly authorized agents, assessed income tax deficiencies against said estate for said fiscal years ending June 30, 1966 and June 30, 1967, on the grounds that plaintiffs were not entitled to take into account the aforesaid selling expenses in arriving at the capital gains and losses for said years since said selling expenses had been deducted as aforesaid on the Federal estate tax return of the estate. The deficiencies in income tax assessed on the aforesaid grounds were $360 for the fiscal year ended June 30, 1966 and $6,533.99 for the fiscal year ended June 30, 1967.

9. The income tax deficiencies assessed as aforesaid have been duly paid by plaintiffs and claims for refund have been duly filed for the refund of the amounts so paid, plus interest thereon as provided by law. Said claims for refund were disallowed by the Internal Revenue Service on or about April 28, 1969.

The following paragraphs 2 and 3 of one of Commerce Trust Company officer's affidavit are not disputed:

2. That the Federal estate tax return, Form 706, for estate of William G. Parrott was filed on or about February 23, 1967; that the selling expenses or commissions which are the issue in this proceeding were listed as deductions on said Federal estate tax return or are being claimed as deductions in connection with the audit of said Federal estate tax return.

3. That the fiduciary income tax deficiencies as assessed by the defendant of $360 for the year ending June 30, 1966 and $6,533.99 for the year ending June 30, 1967, were paid by plaintiff when the Internal Revenue examiner applied said amounts against an income tax refund due the estate in connection with the examiner's report dated February 27, 1968.

The admitted paragraphs of the complaint and the paragraphs quoted from the affidavit shall serve as our findings of fact.

## II.

The parties concede that the question of law presented was ruled in plaintiffs' favor in Estate of Viola E. Bray, 46 T.C. 577 (1966), affirmed sub nom. Commissioner of Internal Revenue v. Estate of Bray, (6th Cir. 1968) 396 F.2d 452. Plaintiffs contend that "the *Bray* result is clearly correct." Defendant contends "that the decision in the *Bray* case is erroneous." We conclude that *Bray* was correctly decided for reasons to be stated.

## III.

The Sixth Circuit expressly stated in *Bray* that it affirmed the judgment of the Tax Court "for the reasons stated in its memorandum opinion reported at 46

T.C. 577" (396 F.2d at 452). The question therefore presented is whether those reasons are valid.

The Tax Court pointed out in its decision that before the 1942 Internal Revenue Code added Section 162(e) to the Internal Revenue Code of 1939, there was no question but that "the selling expenses in connection with the necessary sale of securities by a fiduciary of an estate were deductible for estate tax purposes as administrative expenses and such expenses were also an offset against the selling price for the estate's income tax." The Tax Court noted that the Government argued that "Congress has by the enactment of section 642(g), I.R.C.1954, prohibited double tax benefits from a single economic transaction" and that the Government read section 642(g) "as a *general limitation* against double tax benefits whether they arise from deductions or reductions."

The Government in that case, as it does in this case, relied upon a 1956 ruling of the Commissioner, Rev.Rul. 56–43, 1956–I.C.B. 210, in which the Commissioner attempted to interpret Section 642(g) of the 1942 Code as forbidding the offset for income tax purposes of sale expenses allowed as administration expenses for estate tax. That ruling stated:

> Expenses incurred in the sale of property, other than by a dealer, are considered as an offset against the sale price and not deductible as an ordinary and necessary business expense. See G.C.M. 15430, C.B. XIV–2, 59 (1935). However, such expenses may not be used as an offset against the sale price of property in determining gain or loss for Federal income tax purposes where they have already been allowed as a deduction for Federal estate tax purposes. Such items of expense fall within the concept of section 642(g) of the Internal Revenue Code of 1954. Although section 642 (g) of the Code refers to the disallowance of double deductions, it is the position of the Internal Revenue Service that such section contemplates the

disallowance, as a *reduction* in computing the taxable income of the estate, of such items which have been allowed as a deduction in computing the taxable estate. See Rev.Rul. 240, C.B. 1953–2, 79. [46 T.C. at 580] (Emphasis the Commissioner's.)

The Tax Court, however, held that Congress did not intend by either section 162(e) of the 1939 Code or by section 642(g) of the 1942 Code to obliterate the long-standing distinction between "off-sets" and true statutory "deductions." It pointed out that the differences in language in the two sections was without significance and that section 642 (g), section 162(e) before it, was to be considered as a specific rather than a general limitation. The Tax Court held that:

> The statute does not prohibit taking what is a setoff against selling price and not a true deduction in the income tax return and using the same item to reduce the estate in the estate tax return. In computing income from sales of securities the sales expenses are offset against the sales price or gross receipts to arrive at gross income within the suggested definition of gross income, "Gains derived from dealings in property," found in section 61(a) (3), I.R.C.1954. Certainly the phrase "shall not be allowed as a deduction in computing the taxable income of the estate" found in section 642(g), I.R.C. 1954, must have reference to a deduction *from* gross income and not an item that is set off from a purchase price that is used before gross income is reached. [Ibid at 582] (Emphasis the Tax Court's).

In determining the intent of the Congress, the Tax Court stated:

> When selling expenses are offset against selling price the seller is being taxed on the gain he actually receives. When securities are valued as of the date of death, no account is taken of the fact that the fiduciary might have to sell them. It would seem to be unfair to tax the estate on

the date of death value, with no deduction for selling expenses, and equally unfair to deny the offset of selling expenses against selling price in computing the estate's income tax. We do not think Congress intended that result when it enacted section 162(e) of the 1939 Code and its successor statute, section 642(g), I.R.C. 1954. [Ibid at 582–583].

The Government argues in this case that the 1956 ruling of the Commissioner "correctly interpreted congressional intent * * * even though such expenses are not technically an income tax 'deduction.'" It argues that "offsets" and "deductions" are members of the family of deductible expenses, and that even if "the terms of section 642(g) are not broad enough to cover all conceivable forms of the abuse * * * it is a legitimate office of the courts to give effect to that intent." The Government suggests that "the term 'deduction' as used in section 642(g) should be read [by this Court] as encompassing all items of deduction at every stage in the computation of the estate and income taxes, whether or not they are labeled 'deductions' by statute." In short, it argues that if we follow the Government's invitation to rewrite the statutes that further amendments would not "be necessary to sustain the position of the Commissioner." We refuse to accept that invitation.

■ All the Government's arguments rest upon the implicit assumption that section 642(g) reflected an "expansion" of section 162(e). The same assumption is made in regard to Congress' 1966 amendment to section 642(g). It is argued that the Congress has "made very clear its intent to eliminate loopholes in the prohibition against double tax benefits." We do not believe the relevant legislative history can be said to support such an assumption.

In regard to the passage of section 162(e) in 1942 we agree with the Tax Court's statement that:

It is significant that in 1942, when Congress introduced sec. 162(e) into

the 1939 Code (the predecessor section of sec. 642(g) of the 1954 Code), this Court had just held in 1941 in Estate of Dudley S. Blossom, 45 B.T.A. 691, that certain expenses were properly deductible for estate tax purposes and observed that these same expenses had already been used in computing the estate's income tax. In spite of this Congress did not see fit to treat offsets and deductions alike, but merely limited the statutory language in sec. 162(e) to deductions. [46 T.C. at 580].

In regard to the enactment of section 642(g) of the 1954 Act, both the House Report and the Senate Report stated that "subsection (g) [of Section 642] is * * comparable to section 162(e) of the 1939 Code." See pages 4333 and 4983 of 3 U.S.Code Congressional and Administrative News, 83rd Cong.1954, 2nd Sess., respectively. Such language cannot be said to clearly indicate an intention to eliminate a loophole.

The Senate Report relating to the 1966 amendment to section 642(g), which merely added "or of any person" after the words "shall not be allowed as a deduction," expressly states that the 1966 amendment was enacted in response to the Tenth Circuit's opinion in Commissioner of Internal Revenue v. Burrow Trust, (10th Cir. 1964) 333 F.2d 66, affirming 39 T.C. 1080. See pages 3114–3115 and 3117 of 2 U.S.Code and Administrative News 1966, 89th Cong., 2nd Sess.

Significantly, the Senate Report in regard to the 1966 amendment was filed September 13, 1966. The amendment was passed by the Senate on September 15, 1966, and by the House on September 26, 1966. As in case of the passage of section 162(e) in 1942, the 1966 amendment to section 642(g) was passed shortly after the Tax Court had ruled definitely against the Commissioner's present contention. The Bray case was decided August 10, 1966. We must assume that the sponsors of the 1966 amendment were familiar with Bray and that the Congress did not intend to make any

more of a fundamental change in 1966 than it did in 1942 and 1954.

We believe that if the Congress had intended to wipe out all double tax benefits it could have found appropriate language to accomplish that objective. The legislative history of section 642(g), of its predecessor statute, section 162(e) and of the 1966 amendment does not indicate that the Congress was seeking to find such language. We believe that the Tax Court correctly stated the intention of the Congress in *Bray*. We follow the Sixth Circuit's decision in *Bray* and, as did that court, conclude that, for the reasons stated by the Tax Court and for the reasons we have added, that plaintiffs' motion for summary judgment should be granted.

Accordingly, it is

Ordered that plaintiffs' motion for summary judgment should be and is hereby granted. It is further

Ordered that defendant's motion for summary judgment should be and is hereby denied. It is further

Ordered that counsel for the plaintiffs shall, within five (5) days, prepare, submit to counsel for the defendant for approval as to form, and to thereafter submit to the Court, an appropriate form of judgment for plaintiffs.