**MARSHALL LONG AND BETTY C. LONG, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT**

Docket No. 9088–76.    Filed October 3, 1978.

*Daniel C. Weary* and *Dennis P. Wilbert,* for the petitioners.
*Larry K. Akins,* for the respondent.

---

*See Supplemental Opinion at 724.

1

OPINION

TIETJENS, *Judge:* Respondent determined deficiencies in petitioners' Federal income taxes in the amounts of $18,349.85 for 1971 and $2,164.44 for 1972. After certain concessions, the issue remaining is whether petitioner-husband, as beneficiary of the Estate of John C. Long, may use a net long-term capital loss carryover from the estate.

The facts have been fully stipulated. The stipulations of facts and attached exhibits are incorporated herein by reference.

Petitioners Marshall Long and Betty C. Long resided in Leawood, Kans., when they filed their petition. They filed their joint Federal income tax returns for 1971 and 1972 with the Internal Revenue Service Center in Austin, Tex.

Petitioner Marshall Long and Robert W. Long are the sons of decedent John C. Long. Prior to his death in 1963, the decedent had been a partner with his sons in the Long Construction Co. The partnership was formed in 1942 with the decedent and Robert as its only partners. In 1952, petitioner was also admitted as a general partner. His membership in the partnership lasted only 6 years, however. And when he withdrew from the partnership in 1958, petitioner was released from all partnership liabilities, past, present, and future. After petitioner's withdrawal, the decedent and Robert continued the partnership as general partners, respectively sharing in all partnership profits and losses 25 percent and 75 percent.

During its existence, the partnership and its partners incurred substantial liabilities. In 1955, the partnership erected a building in Kansas City, Mo., for Kansas City Life Insurance Co. of Kansas City, Mo. (hereafter Kansas City Life). The building was occupied by Trans World Airlines (hereafter TWA) under a long-term lease agreement. When structural defects later appeared in the building, Kansas City Life and TWA sued the decedent, Robert, and petitioner as copartners doing business as Long Construction Co. The suit was filed in 1961 seeking $2,350,000 in damages. Also, in 1959, the partnership became a subcontractor on a construction project in Regina, Saskatchewan, Canada. The partnership and its two partners insured completion of the project with a performance bond issued by United States Fidelity & Guaranty Co. (hereafter USF&G). Because the prime

contractor did not complete the project, USF&G was required to perform under the indemnity agreement. Although the partnership was employed to finish the project, USF&G still demanded payment from the partnership and its two partners for their joint and several liability of $3,259,200. Finally, the partnership also borrowed money for working capital. It borrowed $204,758.10 from the City National Bank & Trust Co. of Kansas City in 1963 and $150,000 from the First National Bank of Kansas City in 1959. On December 2, 1959, the decedent also borrowed individually from the First National Bank the principal sum of $230,000.

The decedent died testate on July 5, 1963. According to his last will and testament, his wife, Bertha Long, and his two sons, Robert W. Long and petitioner Marshall Long, were to share equally the residue of his estate. Among the assets so passing to them was the decedent's 25-percent interest in the Long Construction Co. partnership. On its estate tax return, the estate valued the partnership interest at "no value." This valuation was accepted by respondent upon a later audit of the estate.

At the death of the decedent, the above liabilities remained unsatisfied. Thus the following claims were filed against his estate:

| Claimant | Amount |
|---|---|
| Kansas City Life/TWA ............ | $2,350,000.00 |
| USF&G ............................... | 3,259,200.00 |
| First National Bank ................ | 315,101.42 (plus interest) |
| City National Bank ................. | 204,758.10 (plus interest) |

Except for $215,788.92 of the First National Bank claim,[1] all the claims were for liabilities of the partnership, for which the decedent was liable as a general partner. Subsequently, the estate paid the following amounts in settlement of those claims:

| Date paid | Claimant | Amount paid |
|---|---|---|
| 9/6/63 .............. | First National Bank | $319,276.90 |
| 9/10/63 ............. | City National Bank | 205,827.90 |
| 10/19/64 ........... | Kansas City Life/TWA | 200,000.00 |
| 10/19/64 ........... | USF&G | 100,000.00 |

---

[1]This amount represents the amount due on the decedent's personal note dated Dec. 2, 1959.

On October 19, 1964, the estate also paid legal fees of $27,957.03 incurred in the settlement of the USF&G claim.

All but $9,778.66 of the above payments were deducted by the estate on its estate tax return under section 2053(a).[2] The amount not so deducted represents interest on the banks' claims and was deducted on the estate's income tax return only. Those deductions have all been allowed by respondent and are not disputed here.

Although the estate paid the claims, Robert Long was nevertheless liable as a general partner for 75 percent of all partnership liabilities. Thus the probate court of Jackson County, Mo., in its final order of distribution for the estate found Robert Long to be indebted to the estate for his share of partnership liabilities in the amount of $633,561.62. The court treated this amount as an offset against Robert Long's distributive share of the estate.

Meanwhile, the partnership had continued in existence after the decedent's death until it was liquidated on November 13, 1969. The estate was merely substituted as a general partner in place of the decedent. During that time, the estate reported on its income tax return the following amounts of income and losses, which were attributable to its 25-percent partnership interest:

| TYE— | Amount and character |
|---|---|
| 5/31/64 ............ | $1,114.49 (ordinary loss) |
| 5/31/65 ............ | 28,892.86 (ordinary loss) |
| | 92,630.79 (capital loss) |
| 5/31/66 ............ | 187.68 (ordinary loss) |
| 5/31/67 ............ | 4,922.21 (ordinary income) |
| 5/31/68 ............ | 693.75 (ordinary income) |
| 5/31/69 ............ | 305.08 (ordinary income) |
| 12/29/69 ......... | 260.00 (ordinary income) |
| | 1,443.69 (capital gain) |
| Total income .... | 7,624.73 |
| Total losses ...... | 122,825.82 |

When the partnership was liquidated, the estate received a liquidating distribution of $46,417.77 in cash. Although it is

---

[2]Unless otherwise stated, all section references are to the Internal Revenue Code of 1954, as in effect for the taxable years in issue.

unclear from the record, we assume that represents all the partnership assets.

The estate claimed a long-term capital loss upon liquidation of the partnership. In determining that loss, the estate calculated its basis in its partnership interest as follows:

| | |
|---|---|
| Value of partnership interest at date of death | 0 |
| Partnership obligations paid by estate | $639,309.21 |
| *Plus* distributive share of partnership income | 7,624.73 |
| *Less* distributive share of partnership losses | 122,825.82 |
| Total basis in partnership | 524,108.12 |

It thus calculated a long-term capital loss from the partnership liquidation of $477,690.35 and, after considering a long-term capital loss carryover from 1965 and capital gains for 1969, a net long-term capital loss of $514,615.89. Because the estate was unable to use the claimed loss, petitioner claimed his share of it as a beneficiary of the estate. See sec. 642(h). Respondent has disallowed petitioner's claimed loss carryover on the grounds that the estate did not realize a loss upon liquidation of the partnership and that the loss, if allowed, would result in a double deduction.

Before addressing those issues, we note that petitioners argue in their briefs that the contested deficiencies may be barred by the statute of limitations. We do not reach that issue, however, because petitioners have failed to plead it affirmatively. The statute of limitations is an affirmative defense which must be specifically pleaded. Rule 39, Tax Court Rules of Practice and Procedure. Affirmative defenses should not be raised for the first time in a party's brief simply because it does not give the opposing party a fair opportunity to address the issue properly. *Groetzinger v. Commissioner,* 69 T.C. 309, 312 (1977). In his reply brief, respondent objected to petitioners' arguments on that point. We sustain respondent's objection. Petitioners' untimely attack puts respondent in an unfair position. Respondent suggests that there may have been agreed extensions of the limitations period. The record is incomplete on this point probably because the defense was not raised properly. In any event, because the statute was not affirmatively pleaded by petitioners to the prejudice of respondent, it will not be considered. See also *Shomaker v. Commissioner,* 38 T.C. 192, 201 (1962); *Citizens Nat. Trust & Sav. Bank of Los Angeles v.*

*Commissioner*, 34 B.T.A. 140, 145 (1936); *Oilbelt Motor Co. v. Commissioner*, 16 B.T.A. 831, 834 (1929).

We now turn to respondent's first reason for disallowing the loss carryover. He contends that the estate miscalculated the basis of its partnership interest. Respondent argues that no basis adjustments are allowable for payment of the bank claims and the contingent liabilities (i.e., the law suits) because those claims and liabilities were liabilities of the decedent, not the partnership. In any event, he concludes, the liabilities were never "assumed" by the estate within the meaning of section 752(a), and no basis increase for those liabilities is therefore permissible.

The basis of a partnership interest acquired from a decedent is determined under section 1014. Sec. 742. Thus the basis of a partnership interest passing at death is its fair market value at death or, if applicable, at the alternate valuation date. Sec. 1014(a). In addition, respondent's regulations provide for an increase in that basis for the "estate's or other successor's share of partnership liabilities." Sec. 1.742–1, Income Tax Regs. After this initial basis determination, the estate adjusts its basis as any general partner would do. The estate's basis is increased by its distributive share of partnership income and decreased (but not below zero) by its share of partnership losses. Sec. 705(a). Likewise, the estate's basis is increased by the amount of money or the adjusted basis of property contributed by it to the partnership. Sec. 722. And in the case of a nonliquidating distribution by the partnership, the basis is reduced (but not below zero) by the amount of money or the adjusted basis of property distributed to the estate. Sec. 733. Finally, any increase in the estate's share of partnership liabilities or in the estate's individual liabilities by reason of its assumption of partnership liabilities is treated as a contribution of money by the estate to the partnership. Sec. 752(a). Conversely, any decrease in such liabilities or share of liabilities is treated as a distribution of money by the partnership to the estate. Sec. 752(b). These are the basic principles upon which the basis adjustments should be made in this case.

The parties agree that the fair market value of the partnership interest at the death of the decedent was zero, and no one disagrees about the basis adjustments resulting from the estate's distributive share of partnership income and losses. The dispute is over basis adjustments reflecting the estate's pay-

ments of the claims of Kansas City Life-TWA, USF&G, First National Bank, and City National Bank.

Clearly, all the bank claims at issue here, except the claim for $215,788.92, were liabilities of the partnership. The decedent had borrowed the funds from the banks on behalf of the partnership as its general partner, and the notes clearly reflect this fact on their faces. Only the note dated December 2, 1959, upon which the claim for $215,788.92 was based, does not reflect the partnership as a borrower. It was signed by the decedent in his individual capacity, not as a general partner of the partnership. We can only conclude that the decedent had borrowed that amount personally, and that the December 2 note was not a partnership liability.[3]

We think it equally clear that the Kansas City Life-TWA and USF&G claims were liabilities of the partnership. The claims were based upon law suits filed against the partnership and the decedent *as one of its general partners*. One suit was for the faulty construction of a building and the other for failure to perform on a contract. They arose in the context of the partnership's business, and the decedent's liability arose because he was a general partner.

Having decided that the above claims were in fact liabilities of the partnership, we must now determine the estate's basis in its partnership interest. Our starting point is the fair market value of the interest at the date of the decedent's death. See secs. 742 and 1014(a). That amount is zero. The estate then increases its basis to reflect its 25-percent share of partnership liabilities. See sec. 1.742–1, Income Tax Regs. The treatment of the partnership's notes is clearly directed by the regulations. Sec. 1.742–1, Income Tax Regs. The estate's 25-percent share of those notes, $77,328.92, results in an increase in basis in that amount. The treatment of the other claims is not so clear, however.

Although they may be considered "liabilities" in the generic sense of the term, contingent or contested liabilities such as the Kansas City Life-TWA and USF&G claims are not "liabilities" for partnership basis purposes at least until they have become fixed or liquidated. This Court has held on a number of occasions that contingent and indefinite liabilities assumed by the

---

[3]We thus compute the amount of partnership notes outstanding at the decedent's death to be $309,315.68.

purchaser of an asset are not part of the cost basis of the asset. See, e.g., *Yoc Heating Corp. v. Commissioner*, 61 T.C. 168, 179 (1973); *Lemery v. Commissioner*, 52 T.C. 367, 377 (1969), affd. per curiam 451 F.2d 173 (9th Cir. 1971); *Albany Car Wheel Co. v. Commissioner*, 40 T.C. 831 (1963), affd. per curiam 333 F.2d 653 (2d Cir. 1964). We think that partnership liabilities should be treated in the same manner. See generally W. McKee, W. Nelson & R. Whitmire, Federal Taxation of Partnerships and Partners, par. 7.01[2] (1977). We see no logical reason for distinguishing the above cases solely because the asset involved is an interest in a partnership, and neither party suggests such a distinction. Those liabilities should be taken into account only when they are fixed or paid. Cf. *Albany Car Wheel Co. v. Commissioner, supra* at 841.

The Kansas City Life-TWA and USF&G claims were too contingent at the death of the decedent to be included in the estate's initial computation of its basis in the decedent's partnership interest. Liability for those claims had not been established and was in fact contested. Moreover, the amounts of damages sought were by no means definite or fixed. The claimants sought several million dollars in damages and eventually settled for only a total of $300,000. Compare *Bolger v. Commissioner*, 59 T.C. 760, 771 (1973). Thus the estate was not entitled to an increase in basis under section 1.742–1, Income Tax Regs., for its share of the Kansas City Life-TWA and USF&G claims at the date of the decedent's death. However, when the liabilities became fixed or liquidated in 1964, the estate was entitled to an increase in basis under sections 752(a) and 722. The estate then had an increase in its share of partnership liabilities. Thus in 1964 the estate was entitled to increase its basis to reflect its 25-percent share of the liquidated amounts.[4]

Petitioner also seeks an increase in the estate's basis for its payment in full of the partnership notes and the other claims. Approximately 2 months after the decedent died, the estate paid $309,315.68 plus interest to satisfy the partnership notes. One year later, the estate paid $300,000 in settlement of the Kansas City Life-TWA and the USF&G claims. The estate also paid

---

[4]The parties both treat the attorneys' fees incurred in the settlement of the USF&G claim as part of the claim itself, i.e., as a capital expenditure, thus increasing basis as the claim itself did.

legal fees of $27,957.03 incurred in the settlement of the USF&G claim. All of these were paid out of separate funds of the estate.

We think that the estate was entitled to increase the basis of its partnership interest when it paid the above partnership liabilities. When it paid those liabilities out of its separate funds, the estate individually assumed them. Under section 752(a), the individual assumption of partnership liabilities by a partner is considered as a contribution of money by that partner to the partnership. This in turn effects the increase in basis. See sec. 722. Moreover, this increase is separate from that allowed by section 1.742–1, Income Tax Regs., for the partnership notes and by section 752(a) for the other claims when they were finally liquidated. The regulation and section 752(a) contemplate an increase in basis to reflect an increase in the estate's *share* of partnership liabilities. Section 752(a) also requires a separate basis adjustment to reflect a partner's *individual assumption* of partnership liabilities. This is more easily seen if the payment of the partnership liabilities by the estate is viewed as a contribution to partnership capital. Thus, if instead of paying those liabilities directly the estate merely contributed cash to the partnership and the partnership itself made the payments, the estate would increase its basis under section 722. Yet it is clear that the earlier basis increase under section 1.742–1, Income Tax Regs., for the notes and section 752(a) for the other claims when liquidated would not prevent the increase under section 722 for a contribution to capital. Section 752(a) merely recognizes the substance of the transaction by treating the individual assumption of partnership liabilities as a contribution of cash from the partner to the partnership.

Nevertheless, respondent contends that the payment of those liabilities is not an assumption of partnership liabilities within the meaning of section 752(a). He thus argues that there can be an "assumption of liabilities" only when the partner released the partnership from the burden of repaying the obligations. His contention falls under the weight of his own argument. Clearly, when the estate paid the bank claims and the contingent liabilities, the partnership was relieved of the burden of paying those obligations. Once the claims were paid, the claimants could not seek further satisfaction from the partnership. Moreover, the claims were paid out of the separate funds of the estate, not out of partnership funds. Hence it cannot reasonably be argued

that the estate sought a basis increase for a partnership liability that was actually paid for out of partnership funds. This then is the crucial point: the individual or entity who actually pays the claims is the one who has assumed them. Compare *Stilwell v. Commissioner*, 46 T.C. 247, 251–252 (1966).

According to the stipulations of facts and the petitioners' opening statement, however, the estate did not actually pay the full amount of the notes and other liabilities. After paying the partnership liabilities, the estate sought and obtained a determination from the probate court that Robert Long, the other general partner and a beneficiary of the estate, was responsible for his 75-percent share of those liabilities. Robert's distributive share of estate assets was then used to offset his liability for the partnership debts and other claims previously paid by the estate. Thus, although the estate advanced the cash to pay those liabilities, it did not actually carry their full burden. The record is unclear on the extent to which the estate was able to obtain from Robert, through his share of the estate assets or otherwise, his contribution towards the partnership liabilities. In this regard, the burden of proof is on petitioner. Rule 142(a), Tax Court Rules of Practice and Procedure. As the record now stands, we must conclude that the estate did receive Robert's full contribution. There is nothing in the record indicating otherwise, and petitioner does not argue otherwise. We, therefore, compute 25 percent of the partnership liabilities, the share actually assumed individually by the estate, to be $159,318.17. The estate was entitled to increase its basis upon payment of those liabilities by that amount.

Upon payment of those liabilities, the estate also reduced its share of partnership liabilities. When all the claimants were paid, the partnership was no longer liable for those claims. The estate's liability as a general partner depended directly upon the partnership's liability. Thus a reduction in the partnership's liabilities is a reduction in the estate's share of those liabilities. This is considered as a distribution of money from the partnership to the estate, decreasing the estate's basis. Secs. 752(b) and 733. The amount of the decrease in basis should reflect the estate's 25-percent share of partnership notes and the liquidated claims of Kansas City Life-TWA and USF&G.

Therefore, the net effect of all the above adjustments to basis is: (1) An increase in basis at the decedent's death for the

estate's share of partnership notes; (2) an increase in basis for the estate's share of the contingent claims of Kansas City Life-TWA and USF&G when they were finally liquidated; (3) an increase in basis to the extent that the estate itself actually paid the partnership notes and the other liquidated claims; and (4) a decrease in basis to reflect the reduction in the estate's share of partnership liabilities when the notes and other claims were paid.[5]

Notwithstanding all of our opinion to this point, respondent presents another reason for disallowing the basis increase resulting from the above adjustments. He argues that if we allow the basis increase, we are allowing a double tax benefit to the estate and its beneficiary, the petitioner. The estate deducted the liabilities involved from its gross estate under section 2053(a) in computing its Federal estate tax and would again be using those payments, through a basis increase, for the Federal income tax benefit of petitioner. It is not entirely clear from the record if the above basis adjustments as we have determined them effected a loss upon liquidation of the partnership. The deficiency here is based in part on the disallowance of that purported loss. However, it also appears to

---

[5]We compute the basis adjustments as follows:

| | | |
|---|---|---:|
| (1) | increase at death for estate's share of partnership notes | $77,328.92 |
| (2) | increase for estate's share of Kansas City Life-TWA and USF&G claims when liquidated (together with its share of attorneys' fees incurred in settlement of those claims) | 81,989.25 |
| (3) | increase to reflect estate's payment of the notes and other claims | 159,318.17 |
| (4) | decrease to reflect reduction in estate's share of partnership liabilities upon payment of the notes and other claims | (159,318.17) |
| Net basis increase | | 159,318.17 |

Moreover, according to the stipulations in the record, the partnership realized total income of $7,642.73 and total losses of $122,825.82 between 1964, when it first acquired the interest, and 1969, when the partnership was liquidated. This should result in a net decrease in basis of $115,201.09, leaving the estate with a basis of $44,117.08 in its partnership interest when the partnership was liquidated. These computations are subject to review prior to the entry of our decision under Rule 155, Tax Court Rules of Practice and Procedure.

One other point must be noted. We suspect that the payment of the Kansas City Life-TWA and USF&G claims were deductible by the partnership under sec. 162 or 165. If so, the deductions should have passed through the partnership to the estate either reducing its basis in its partnership interest or offsetting other partnership income which would otherwise have caused an even greater basis increase for the estate. We do not decide whether those apparent deductions were in fact correctly treated by the parties because neither party raises that as an issue, and we have no way of determining from the stipulated facts whether those items were so treated.

be based in part upon the disallowance of other capital losses realized by the partnership which passed through the partnership and the estate to petitioner. Unless the estate is entitled to increase its basis as we have suggested it should, most of those losses apparently would be wasted. See sec. 704(d). Thus the basis adjustments would affect the amount of the deficiency even if there is no loss realized upon liquidation of the partnership after allowing the basis increase. We must therefore decide whether respondent's other reason for not allowing the basis increase should be sustained.

Initially, we must emphasize that there is no necessary inconsistency in deducting items for both estate and income tax purposes. The two taxes are different in theory and incidence. *Adams v. Commissioner*, 110 F.2d 578, 583 (8th Cir. 1940), vacating and remanding a Memorandum Opinion of this Court; cf. *Estate of Blossom v. Commissioner*, 45 B.T.A. 691, 693 (1941). Congress has specifically prescribed in section 642(g) the circumstances under which deductions allowable in computing the taxable estate of a decedent shall be disallowed for income tax purposes. We are bound to follow those directions without substituting our own standards.

For the taxable years in issue,[6] section 642(g) provided:

(g) DISALLOWANCE OF DOUBLE DEDUCTIONS.—Amounts allowable under section 2053 or 2054 as a deduction in computing the taxable estate of a decedent shall not be allowed as a deduction in computing the taxable income of the estate, unless there is filed, within the time and in the manner and form prescribed by the Secretary or his delegate, a statement that the amounts have not been allowed as deductions under section 2053 or 2054 and a waiver of the right to have such amounts allowed at any time as deductions under section

---

[6]Sec. 642(g) currently provides:

(g) DISALLOWANCE OF DOUBLE DEDUCTIONS.—Amounts allowable under section 2053 or 2054 as a deduction in computing the taxable estate of a decedent shall not be allowed as a deduction (*or as an offset against the sales price of property in determining gain or loss*) in computing the taxable income of the estate *or of any other person,* unless there is filed, within the time and in the manner and form prescribed by the Secretary, a statement that the amounts have not been allowed as deductions under section 2053 or 2054 and a waiver of the right to have such amounts allowed at any time as deductions under section 2053 or 2054. This subsection shall not apply with respect to deductions allowed under part II (relating to income in respect of decedents). [Emphasis supplied.]

Sec. 2009(d), Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1520, 1896, added "(or as an offset against the sales price of property in determining gain or loss)" for taxable years ending after Oct. 4, 1976. Sec. 2, Pub. L. 89–621, 80 Stat. 872–873 (1966), added "or of any other person" for taxable years ending after Oct. 4, 1966, but only for amounts paid or incurred and for losses sustained after that date.

2053 or 2054. This subsection shall not apply with respect to deductions allowed under part II (relating to income in respect of decedents).

This limitation applies only to deductions, not reductions or offsets against selling prices. See generally R. Stephens, G. Maxfield & S. Lind, Federal Estate and Gift Taxation, pp. 5–12 (3d ed. 1974); M. Ferguson, J. Freeland & R. Stephens, Federal Income Taxation of Estates and Beneficiaries, p. 320 (1970). Thus in *Estate of Bray v. Commissioner*, 46 T.C. 577 (1966), affd. per curiam 396 F.2d 452 (6th Cir. 1968), selling expenses deducted for estate tax purposes under section 2053 were also allowable as an offset against the selling price in computing the estate's income tax. There we specifically held that section 642(g) is not a general limitation against all double tax benefits, but is only a specific limitation against double *deductions*. 46 T.C. at 580. See also *Commerce Trust Co. v. United States*, 438 F.2d 111 (8th Cir. 1971), and cases cited therein.

It is clear that the income tax benefit which respondent seeks to disallow here is not a deduction. See secs. 1001(a) and 704(d). Certainly the estate and its beneficiary, the petitioner, are enjoying a double tax benefit from the estate's payment of the partnership liabilities. The estate has deducted those expenditures in computing the taxable estate, and because of basis adjustments made for those same payments, petitioner is able also to enjoy certain capital losses from the partnership. But again, section 642(g) disallows double *deductions* only. A basis increase is not a deduction even though it may result in a later income tax benefit by reducing gain or increasing loss upon disposition of the partnership interest or by allowing the pass through of partnership losses that would otherwise be wasted because of an insufficient basis in that interest.

*Decision will be entered under Rule 155.*