ÖILBELT MOTOR CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14700.   Promulgated May 31, 1929.

*George S. Atkinson, Esq.*, for the petitioner.
*Brice Toole, Esq.*, for the respondent.

OPINION.

MILLIKEN: The parties have stipulated that the taxpayer was affiliated with the Citizens Motor Co., of Shreveport, La., and the Triangle Motor Co., of Marshall, Tex., during the taxable period in controversy, viz, from May 31, 1920, to December 31, 1920, and it follows that the ruling of the Commissioner to the contrary was erroneous. This leaves for our determination two principal questions, viz, (1) has the Commissioner the power to reverse himself after the payment of an erroneous refund and determine a deficiency based on such refund, and (2) where a subsidiary affiliated corporation paid its share of the consolidated tax to its parent corporation, which paid it to the United States, and subsequently obtained a re-

fund which was entirely appropriated by the parent corporation, is the subsidiary entitled to credit for the amount so paid by it in the event a deficiency is determined?

The questions arise in this way: The three corporations were affiliated during the period from May 31, 1920, to December 31, 1920, and filed a consolidated return in the name of the Citizens Motor Co., showing a tax due of $3,461.01. This tax was paid to the United States by the Citizens Motor Co. and the taxpayer paid to the Citizens Motor Co. $2,494.09 as its share of the tax. Subsequently, in 1921 the stockholders of the three corporations by purchase and exchange reorganized them so that they became separate business entities and unaffiliated. On March 24, 1924, the Citizens Motor Co., the former parent corporation, filed an amended return for 1920, in which it claimed that it was not affiliated with the taxpayer in 1920 and sought a refund of $2,906.15. The Commissioner ruled that there was no affiliation in 1920 and granted a refund of $2,201.10 to the Citizens Motor Co., which received the entire refund and paid none of it to the taxpayer or in its behalf. The claim for refund was without the knowledge or consent of the taxpayer.

Thereafter, by letters of February 13, 1926, and September 28, 1926, the Commissioner reversed himself and held that the three corporations were affiliated during the taxable period and that because of the erroneous refund there was a deficiency of $2,261.56, all of which was determined as a tax liability of the taxpayer instead of against the Citizens Motor Co., which had received the entire refund.

At the outset we are confronted with the argument by taxpayer that the Commissioner was without power to reverse himself after an erroneous refund and determine a deficiency based on such erroneous refund. Taxpayer does not allege this as an error in its pleadings, but counsel has argued it in his brief. The general rule is that we will not consider errors, or legal questions unless properly alleged in the pleadings, but we deem this jurisdictional and will pass on it

In support of taxpayer's position that an erroneous refund does not constitute a deficiency, we are referred to the case of *Kelley* v. *United States*, 30 Fed. (2d) 193, decided by the Circuit Court of Appeals for the Ninth Circuit, but we do not think it decisive of the question in this case. In the *Kelley* case an estate tax had been paid on the whole of a community estate and then half of it had been refunded. Subsequently, the Commissioner reversed himself, held the refund to be erroneous, and determined a deficiency in the amount of the refund. Upon refusal of the executrix and beneficiary to pay the deficiency the United States brought suit in equity to collect it and the question arose as to the proper remedy and procedure, viz, whether

the United States could bring suit in equity for the enforcement of a tax, or institute an action at law to recover money had and received. In deciding that an action at law was the proper remedy, the court took occasion to say, *obiter dictum*, that an erroneous refund could not constitute a deficiency. This was not necessary for the court to decide as there had been admittedly an erroneous refund and the question was as to the proper side of the docket on which to bring the suit, a mere technical question of procedure which did not involve the merits of the case in any way.

We prefer to adhere to the rule laid down by this Board in the case of *Austin Co.*, 8 B. T. A. 628, where we said:

> The Board has heretofore had occasion to consider the question raised by petitioner relating to the authority of the Commissioner. to reconsider his action after having made a refund of taxes to a taxpayer, under a similar state of facts, and has held that the Commissioner may within the statutory period, or within the statutory period or such period as may be agreed upon between the Commissioner and the taxpayer, assess such tax as he determines to be due. *Dallas Brass & Copper Co.*, 3 B. T. A. 856; *Warner Sugar Refining Co.*, 4 B. T. A. 5; *First National Bank of Plattsburg, Mo.*, 4 B. T. A. 478. The provision of section 273 of the Revenue Act of 1926 would also seem to contemplate that this might be done.

Cf. *Good Manufacturing Co.*, 15 B. T. A. 583.

In *Girard Trust Co.* v. *United States*, 270 U. S. 163, the question was when interest was payable on tax refunds and for what period and this involved the power of the Commissioner to make the award and to change it. The Chief Justice said:

> It is said that this is a remedial statute and was intended to require the Government to recoup the taxpayer unjustly dealt with by paying interest during the whole time the money was detained. That was doubtless its general purpose. But the statute is to be construed in the light of the difficulties of the Government bookkeeping and accounting. To have made the interest calculable to the date of actual payment would have led to uncertainty and confusion, as the Comptroller General indicates, and it was doubtless for that reason that Congress qualified its desire to pay interest for the exact time during which the money was detained to a date which was practical from an administrative standpoint. Nor does the fact that, pending the carrying out of the direction of the Commissioner of Internal Revenue to make the refund, he might reverse himself, change the finality of his decision allowing the refund. If he does so, the date fixed as the date of the allowance under the section is changed of course, but the mere fact that he can reverse a final allowance does not prevent its being a final allowance, any more than when a court renders a judgment, its ability within the term to set it aside or change it affects its finality, if it is not changed.

In the recent case of *Botany Worsted Mills* v. *United States*, 278 U. S. 282, the court had before it the validity of an alleged settlement between the taxpayer and Commissioner and held the same invalid because not effected in conformity with section 3229 of the Revised Statutes, which requires all settlements to be with the advice and

consent of the Secretary of the Treasury and recommendation of the Attorney General, and the filing of the opinion of the Solicitor of Internal Revenue giving his reasons therefor. In that case, after the original return had been made and the tax paid, the Commissioner audited taxpayer's books and notified it of the necessity of an additional assessment. Conferences and correspondence were had and ultimately figures were agreed upon and the additional tax was paid. Subsequently the taxpayer brought suit to recover part of it as having been illegally collected and the United States relied upon the alleged agreement as precluding a recovery, but the court held there had been no settlement as above indicated and that the taxpayer had the right to sue.

Practically the same question was before the Circuit Court of Appeals for the Second Circuit in the recent case of *L. Loewy & Son* v. *Commissioner*, 31 Fed. (2d) 652, in which the court affirmed the Board of Tax Appeals (11 B. T. A. 596). The court followed the decision in the case of *Botany Worsted Mills* v. *United States, supra*, holding that an informal settlement of tax liability did not bar further assessments, since it was not made in compliance with section 3229, Revised Statutes. After quoting from the *Botany Worsted Mills* case the court said:

In view of the *Botany Worsted Mills* decision, it is quite manifest that a binding adjustment of a disputed tax case can only be had in the way prescribed by the statute and that the Commissioner was free to revise his figures and make his final assessment at any time within the period allowed by statute.

The term "deficiency" is defined in section 273 of the Revenue Acts of 1924 and 1926 to be "The amount by which the tax imposed by this title exceeds the amount shown as the tax by the taxpayer upon his return; but the amount so shown on the return shall first be increased by the amounts previously assessed (or collected without assessment) as a deficiency, and decreased by the amounts previously abated, credited, refunded, or otherwise repaid in respect of such tax."

It will be observed that the statute expressly recognizes that in arriving at the correct tax there may have been additional assessments, or collections, abatements, refunds, and credits clearly indicating that a refund, erroneous or otherwise, does not bar further action by the Commissioner.

In view of these decisions and statute we hold that the Commissioner has power at any time within the period of limitation to revise or change his findings unless a settlement has been made pursuant to section 3229 of the Revised Statutes, and that in so doing he may determine a deficiency based upon an erroneous refund.

The deficiency seems to have been computed in proportion to the net income of the taxpayer, but no credit was given taxpayer for the $2,494.09 paid by it to the Citizens Motor Co., the parent corporation, and which was paid to the United States by the latter.

In the cases of *George A. Fink Co.*, 5 B. T. A. 76, and *Mather Paper Co.*, 3 B. T. A. 1, affiliated corporations had filed a consolidated return and the subsidiary corporations had paid part of the tax to the parent corporation, which had paid the tax to the United States. Upon the determination of a deficiency the question arose as to whether or not the subsidiary corporations were entitled to credit for the amounts previously paid the parent corporation and it was held that they were.

In the *George A. Fink Co.* case we said:

The next question is the same as one of the issues involved in the *Appeal of Mather Paper Co., supra,* in which it was stated:

" Under the provisions of section 273 of the Revenue Act of 1924 it is the duty of the Commissioner to determine the deficiency upon the basis of the correct amount of tax, less the amount of tax shown by the taxpayer upon his return, with other adjustments not here in issue. Upon its return, this taxpayer, through the medium of the Shuttleworth Co., indicated an amount of tax shown to be due in the proportion of the net income returned by this taxpayer in the consolidated return to the total net income, exclusive of minus quantities. This amount the Commissioner has not credited in connection with the computation of the deficiency here in question. It should be credited in the determination of this deficiency. The return of the taxpayer filed as a part of the above consolidated return is in evidence and the proper computation can be made therefrom."

In the computation of the deficiencies against these petitioners they should be given credit for their proportional part of the tax shown due by the consolidated return hereinbefore mentioned.

To the same effect is the case of *C. A. O'Meara et al.*, 11 B. T. A. 101, where the Board said:

The next question raised in the petition of the Orlando Petroleum Co. relates to the credit to which it is entitled on account of taxes assessed and paid at the time of filing its original return. The material facts with which we are here concerned are as follows: The Orlando Petroleum Co. and the Elmhurst Investment Co. filed a consolidated return for 1919 in which was shown a consolidated tax liability of $297,748.91. At the same time, the Orlando Petroleum Co. filed an information return as a subsidiary on which it was stated that the amount of tax apportioned to it was $218,203.81. The parties have stipulated that in the payment of the total tax liability for the group of $297,748.91, the Orlando Petroleum Co. furnished $218,203.81 and the Elmhurst Investment Co. $79,545.10. The entire amount of $297,748.91 was assessed against the Elmhurst Investment Co., which company made payment of same with its own checks on which appeared notations of the amount applicable to each company, the notation with respect to each company being in agreement with the amount which the parties have stipulated as being furnished by each. In the deficiency notice which forms the basis of this appeal, and which was submitted in evidence, the respondent showed the amount previously assessed

against the Orlando Petroleum Co. as "None" and accordingly found a deficiency of $154,767.19, the total tax liability of this petitioner. In the deficiency notice to the Elmhurst Investment Co. which was prepared some months later than the deficiency notice to the Orlando Petroleum Co. and which was likewise submitted in evidence, the respondent gave the Elmhurst Investment Co. credit of $79,545.10, and stated that the remainder of the $297,748.91, or $218,203.81 which had been assessed against the Elmhurst Investment Co. was properly applicable to the Orlando Petroleum Co.

The question is the effect to be given in determining a deficiency in the case of the Orlando Petroleum Co. to the assessments and payments made on account of its tax liability at the time the consolidated return was filed. Under the provisions of section 273, Revenue Act of 1926, it is the duty of the Commissioner to determine the deficiency upon the basis of the correct amount of tax, less the amount of tax shown by the taxpayer upon his return with other adjustments not here in issue. Section 240 (a) of the Revenue Act of 1918 provides in part as follows:

"In any case in which a tax is assessed upon the basis of a consolidated return, the total tax shall be computed in the first instance as a unit and shall then be assessed upon the respective affiliated corporations in such proportions as may be agreed upon among them, or, in the absence of any such agreement, then on the basis of the net income properly assignable to each."

The deficiency was determined without allowing any credit to the Orlando Petroleum Co. for taxes assessed on the consolidated return in which its income was included. While there is insufficient evidence before us to substantiate a finding that there was an agreement which would control as to all apportionments of taxes as between the two companies, or the basis of the agreement which existed between them, we are of the opinion that the record before us justifies the conclusion that of the taxes assessed and paid on account of the tax liability shown on the consolidated return of the Elmhurst Investment Co. and the Orlando Petroleum Co. an amount of $218,203.81 was properly attributable to the latter company and should have been allowed as a credit against the total tax liability of this company in determining whether a deficiency exists. This amount is shown in the information return as apportioned to this company and is the amount furnished by this company to the Elmhurst Investment Co. which paid the tax, and showed by notations on its checks that this amount was applicable to the Orlando Petroleum Co. This is likewise in accord with the admission of the Commissioner in the deficiency notice to the Elmhurst Investment Co. which was submitted in evidence and which denies a credit to the Elmhurst Investment Co. of the entire tax assessed against it for the reason that $218,203.81 was applicable to the Orlando Petroleum Co. This was also, in effect, admitted by the respondent at the hearing.

The Board is accordingly of the opinion that in the redetermination of the tax liability of the Orlando Petroleum Co. credit should be given against such tax liability of $218,203.81 which was assessed and paid when the consolidated return in question was filed. Cf. *Mather Paper Co.*, 3 B. T. A. 1, and *Cincinnati Mining Co.*, 8 B. T. A. 79.

Cf., also, *Swift & Co.* v. *United States*, 67 Ct. Cls. 322, and *West Virginia Rail Co.* v. *Jewett-Bigelow & Brooks Coal Co.*, 26 Fed. (2d) 503.

In the instant case the taxpayer is entitled to credit for $2,494.09 while the deficiency is $2,261.56. Applying this credit against the

deficiency, it results that there is no liability on the taxpayer for payment of the deficiency.

Reviewed by the Board.

*Judgment will be entered for the petitioner.*

ARUNDELL and MURDOCK dissent on the second point.