WALKER GROETZINGER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

SARA H. GROEZINGER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 5446–76—5447–76.     Filed November 28, 1977.

*Vincent L. Alsfeld,* for the petitioners.
*Daniel P. Ehrenreich,* for the respondent.

OPINION

TIETJENS, *Judge:* Respondent determined a deficiency in the Federal estate tax of the Estate of Nancy W. Groezinger in the amount of $19,667.74 and determined the following liabilities of petitioners as transferees of the estate:

| Petitioner | Liability |
|---|---|
| Walker Groetzinger | $8,316.92 |
| Sara H. Groezinger | 8,316.92 |

The issues are whether this Court has jurisdiction over the petitions and, if so, whether petitioners are liable as transferees in the amounts received.

This case was fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and attached exhibits are incorporated herein by reference.

Petitioner Walker Groetzinger resided in Wilton, N. H., when he filed his petition. Petitioner Sara H. Groezinger resided in Flemington, N. J., when she filed her petition.

On December 24, 1970, Nancy W. Groezinger died testate. She was survived by Walker Groetzinger and Eric Groezinger, both of whom shared her estate equally under her will. The will named Eric as executor, for which he qualified. Several months later Eric Groezinger died. He was succeeded as executor by his widow, petitioner Sara H. Groezinger. Under the terms of Eric's will, Sara inherited Eric's entire estate including his interest in Nancy's estate.

The Estate of Nancy W. Groezinger (hereafter the estate) timely filed its Federal estate tax return on April 16, 1971, with the District Director of Internal Revenue, Newark, N. J. The return reported an estate tax due of $19,668.38. The estate was subsequently audited, and a deficiency in the amount of $1,643.53 was assessed. After the audit, the estate paid the total Federal estate tax due of $21,311.91. The payment was made by

check on November 22, 1971. A second deficiency of $2,456 was later determined and paid on December 6, 1971. All taxes having been paid, the estate received an estate tax closing letter from respondent dated March 31, 1972.

We would guess that to someone's surprise, the estate later received an added bonus. Due to respondent's error in posting the payments made by the estate, respondent refunded $19,667.74 to the estate. The refund was promptly deposited in the estate's bank account on June 6, 1972. On June 7, 1972, the funds were distributed to petitioners and others. The petitioners received $8,316.92 each. The disbursements left no balance in the account and left the estate without assets.

Apparently the error went undiscovered for several years.

On March 23, 1976, respondent issued its notice of liability (90 day letter) to petitioner Sara H. Groezinger for the erroneous refund traceable directly to her. Similarly, on March 24, 1976, respondent issued a notice of liability to Walker Groetzinger. Both petitioners timely filed their petitions with this Court. We have consolidated their cases for joint consideration. Respondent has timely filed his answers, and aside from the petitions and joint motions to consolidate and to correct the spelling of the caption herein, no other pleadings have been filed by either party prior to the filing of their briefs.[1]

Respondent contends that there is a deficiency within the meaning of section 6211[2] in the estate's Federal estate tax and that petitioners are liable for that deficiency as transferees of the estate in the amounts transferred to them out of the erroneous refund. Petitioners contend that this Court does not have jurisdiction to redetermine the liabilities involved. Rather, respondent's remedy lies in civil actions against petitioners in the district courts. There is no dispute over the amounts involved or the fact that petitioners each received a portion of the refund in question. Thus the only issues are whether this Court has jurisdiction over the petitions and, if so, whether petitioners are liable as transferees in the amounts received by them out of the erroneous refund.

Before addressing those issues, we note that apparently at

---

[1]After the briefs were filed and arguments were heard, petitioners filed a motion to amend their pleadings. The motion was denied because it was untimely.

[2]Unless otherwise stated, all sections refer to the Internal Revenue Code of 1954.

least part of the liabilities involved may be barred by the statute of limitations.[3] We do not, however, reach that issue because petitioners have failed to plead it affirmatively. It does not appear in the petitions or in any other pleading. Moreover, in their briefs petitioners' only argument with respect to the statute of limitations was that "the statute of limitations for [the] recovery of an erroneous refund has expired." No further explanation or reference to dates and Code sections was made.

The statute of limitations is an affirmative defense which must be specifically pleaded. Rule 39, Tax Court Rules of Practice and Procedure. Affirmative defenses should not be raised for the first time in a party's brief simply because it does not give the opposing party a fair opportunity to properly address the issue.[4] It seems clear from respondent's briefs that he did not consider the statute of limitations to be in issue directly. Thus his briefs only address the issues of jurisdiction and liability. Because the statute of limitations was not properly raised by petitioners and not addressed directly in respondent's briefs, it will not be considered. See *Shomaker v. Commissioner*, 38 T.C. 192, 201 (1962); *Citizens Nat. Trust & Sav. Bank of Los Angeles v. Commissioner*, 34 B.T.A. 140, 145 (1936); cf. *Oilbelt Motor Co. v. Commissioner*, 16 B.T.A. 831, 834 (1929) (except for jurisdictional questions, all issues must be raised in pleadings).

Again, petitioners assert that this Court lacks jurisdiction to redetermine the liabilities involved herein; proper jurisdiction lies only with the district courts. In support of their contention, petitioners cite section 7405. Section 7405 provides for the recovery of erroneous refunds by means of civil actions in the district courts.[5] However, both the permissive language of the section and its legislative history indicate that the section was not intended to provide an exclusive remedy for the recovery of erroneous refunds. Added to the Internal Revenue Code by the Revenue Act of 1928, section 610 (now sec. 7405) provided the

---

[3]But see sec. 6324, discussed *infra*.

[4]*Lamm v. Commissioner*, T. C. Memo. 1977–336.

[5]Specifically, sec. 7405 provides:

(a) REFUNDS AFTER LIMITATION PERIOD.—Any portion of a tax imposed by this title, refund of which is erroneously made, within the meaning of section 6514, *may* be recovered by civil action brought in the name of the United States.

(b)REFUNDS OTHERWISE ERRONEOUS.—Any portion of a tax imposed by this title which has been erroneously refunded (if such refund would not be considered as erroneous under section 6514) *may* be recovered by civil action brought in the name of the United States. [Emphasis supplied.]

Government with a remedy for recovering erroneous refunds by means of a civil action as well as assessment. It was intended to broaden, not limit, respondent's remedies for the recovery of erroneous refunds.

This section relates to the recovery of erroneous refunds as defined in * * * [sec. 6514] and also to refunds which are erroneous independently of * * * [sec. 6514]. The section provides that any erroneous refund, of either class, may be recovered by suit brought in the name of the United States if such suit is begun within two years after the making of the refund. *Obviously, if the limitation period on the making of assessments has not expired, the erroneous refund may be recovered by assessment in the ordinary manner.* [S. Rept. 960, 70th Cong., 1st Sess. 42, 1939–1 C.B. (Part 2) 409, 438. Emphasis supplied.]

Clearly, section 7405 does not preclude the attempted assessments in this case. See also *Milleg v. Commissioner,* 19 T.C. 395 (1952).

Furthermore, this Court generally has jurisdiction over transferee liabilities for the amount of tax shown on the return and for any deficiency or underpayment of any tax. See sec. 6901.[6] Hence section 6901(b) requires the transferee's liabilities for the amount of tax shown on the return or for any deficiency or underpayment to be assessed, paid, and collected in the same manner as the taxes upon which the liabilities are based. And all such liabilities may be contested either in this Court or in the Federal district courts. See S. Rept. 52, 69th Cong., 1st Sess. (1926), reprinted in 1939–1 C.B. (Part 2) 332, 354–355; H. Rept. 356 (Conf. Rept.), 69th Cong., 1st Sess. (1926), reprinted in 1939–1 C.B. (Part 2) 361, 371–372. See also *United States v. Russell,* 461 F.2d 605 (10th Cir. 1972), cert. denied 409 U.S. 1012 (1972). Thus, if there is an amount shown on the estate's return, a deficiency, or an underpayment for which petitioners may be liable as

---

[6]Sec. 6901 provides in pertinent part:

(a) METHOD OF COLLECTION.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:

(1) INCOME, ESTATE AND GIFT TAXES.—

(A) TRANSFEREES.—The liability, at law or in equity, of a transferee of property—

    \*      \*      \*      \*      \*      \*      \*

(ii) of a decedent in the case of a tax imposed by chapter 11 (relating to estate taxes),

    \*      \*      \*      \*      \*      \*      \*

in respect of the tax imposed by subtitle A or B.

    \*      \*      \*      \*      \*      \*      \*

(b) LIABILITY.—Any liability referred to in subsection (a) may be either as to the amount of tax shown on a return or as to any deficiency or underpayment of any tax.

transferees of the taxpayer estate, this Court has jurisdiction. See sec. 301.6901–1(a), Proced. & Admin. Regs.

Respondent contends that there is a deficiency here within the meaning of section 6211. Section 6211 defines a deficiency as the amount by which the tax actually imposed exceeds: (1) The amount shown as a tax on the tax return, plus (2) the amounts previously assessed or collected without assessment as a deficiency, minus (3) the amount of rebates. Sec. 6211(a).[7] A rebate is an abatement, credit, refund, or other repayment made on the ground that the tax imposed was less than the amount shown on the return and the amounts previously assessed or collected without assessment. Sec. 6211(b)(2).[8]

We do not think that a finding of deficiency is supported by the record. The amount of tax actually imposed on the estate is $23,767.91. This is undisputed by all parties. It is also undisputed that the amount shown on the estate's Federal estate tax return was $19,668.38, and that previous assessments, which were collected, totaled $4,099.53. The only dispute is whether the refund of $19,667.74 is a rebate. The refund was made because of an error by respondent in posting the payments made by the estate. Apparently respondent's accounting error led him or his computer to believe that the estate had paid $19,667.74 more than the tax imposed. Thus the refund was made for a reason other than that specified in section 6211(b)(2) and did not result in a rebate. See also sec. 301.6211–1(f), Proced. & Admin. Regs. In this regard, the burden of proof is on petitioners. See sec. 6902(a). They have met that burden.

---

[7]Sec. 6211(a) provides:

(a) IN GENERAL.—For purposes of this title in the case of income, estate, and gift taxes imposed by subtitles A and B and excise taxes imposed by chapters 41, 42, 43, and 44 the term "deficiency" means the amount by which the tax imposed by subtitle A or B, or chapter 41, 42, 43, or 44, exceeds the excess of—
  (1) the sum of
    (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus
    (B) the amounts previously assessed (or collected without assessment) as a deficiency, over—
  (2) the amount of rebates, as defined in subsection (b)(2), made.

[8]Sec. 6211(b)(2) provides:

(b) RULES FOR APPLICATION OF SUBSECTION (a).—For purposes of this section—

\* \* \* \* \* \* \*

  (2) The term "rebate" means so much of an abatement, credit, refund, or other repayment, as was made on the ground that the tax imposed by subtitle A or B or chapter 41, 42, 43, or 44 was less than the excess of the amount specified in subsection (a)(1) over the rebates previously made.

Respondent's reliance on *Levy v. Commissioner*, 18 B.T.A. 337, 340 (1929); *Oilbelt Motor Co. v. Commissioner, supra* at 834–835; *Austin Co. v. Commissioner*, 8 B.T.A. 628, 630 (1927); *Newman v. Commissioner*, 6 B.T.A. 373, 376 (1927); and *First National Bank of Plattsburg, Mo. v. Commissioner*, 4 B.T.A. 478, 481 (1926), is misplaced. All of the taxpayers in those cases had requested the refunds that were erroneously made. Here, the taxpayer estate never requested the refund; the refund was the result of respondent's bookkeeping error. Moreover, those cases dealt with deficiencies as defined in section 307 of the Revenue Act of 1926, ch. 27, 44 Stat. 9. Section 307 had provided:

Sec. 307. As used in this title in respect of a tax imposed by this title the term "deficiency" means—

(1) The amount by which the tax imposed by this title exceeds the amount shown as the tax by the executor upon his return; but the amount so shown on the return shall first be increased by the amounts previously assessed (or collected without assessment) as a deficiency, and *decreased by the amounts previously abated, refunded, or otherwise repaid in respect of such tax;* * * * [Emphasis supplied.]

Section 6211(b)(2), however, modified that definition by treating as rebates only those refunds made *on the ground that* the tax imposed is less than the tax shown on the return plus amounts previously assessed (or collected without assessment) as a deficiency. Thus the above cited cases cannot be relied on, and we must therefore conclude that the erroneous refund did not result in a deficiency.

Nevertheless, there is an underpayment of tax within the meaning of section 6901(b), upon which the asserted liabilities are based. The estate had filed its Federal estate tax return showing $19,668.38 due as its estate tax. Subsequently, a deficiency of $1,643.53 was assessed. The estate issued its check for $21,311.91, which was negotiated by respondent. A second deficiency of $2,456 was assessed; and the estate issued a second check to respondent in that amount, which was also negotiated. Finally, because of a bookkeeping error, respondent issued a check to the estate for $19,667.74, which the estate negotiated and transferred to petitioners among others. Arguably, the estate taxes were fully paid after respondent negotiated the second check. But when all of the financial transactions are viewed together, there is clearly an underpayment of tax. Cf. *Commissioner v. Court Holding Co.*, 324 U.S. 331 (1945). The

amount of tax due was not fully paid. Only a net amount of $4,100.17 was actually paid. Hence there was an underpayment of tax in the amount of $19,667.74. And the liabilities asserted herein are in fact based on that underpayment. Respondent has traced the erroneous refund to petitioners and seeks to collect that portion directly traceable to them.

Therefore, because the asserted liabilities are based on an underpayment of the transferor's estate taxes, and because petitioners have properly filed with this Court their petitions for redetermination of their liabilities, this Court has jurisdiction.

The second issue is whether petitioners are in fact liable as transferees for the amount of the erroneous refund transferred to them. The burden of proof in this regard is on respondent. See sec. 6902(a). Respondent argues that petitioners are liable as transferees under New Jersey law; because the transfers occurred in New Jersey, section 6901 and *Commissioner v. Stern,* 357 U.S. 39 (1958), require us to look to New Jersey law for substantive liability. However, section 6324 provides for the substantive liability of the transferees of estates with respect to the estate tax without regard to State law. See *Schuster v. Commissioner,* 312 F.2d 311 (9th Cir. 1962), affg. 32 T.C. 998 (1959); cf. sec. 6901 (h). See also *Commissioner v. Stern, supra.*

In order to establish liability under section 6324, respondent must show that the estate tax imposed by chapter 11 was not paid when due, and that the transferees have received property included in the gross estate under sections 2034 to 2042. Sec. 6324(a)(2). If those requirements are proven by respondent, petitioners will be liable for the amounts involved. There is no dispute over the amounts actually received by petitioners. Hence they are transferees of the estate. And as we previously discussed, there has been an underpayment of tax; the tax has not yet been fully paid. Consequently, if the petitioners are holding property includable in the decedent's gross estate under sections 2034 to 2042, they are liable as transferees.[9]

We think that petitioners are holding property includable in decedent's gross estate. Each has received one-half of decedent's estate. The amounts traced directly to them were nothing more than a part of estate funds paid to respondent and erroneously

_____

[9]See also *Peterson v. Commissioner,* T. C. Memo. 1972–65.

refunded by him. We see no reason why those funds or any other estate assets would have been excluded from the gross estate, and none of the parties has suggested otherwise. Thus we hold that petitioners are liable under section 6324(a)(2) as transferees of the Estate of Nancy W. Groezinger.

*Decisions will be entered for the respondent.*