T.C. Memo. 1997-327


UNITED STATES TAX COURT


FREDERIC S. CLAYTON and MARLENE B. CLAYTON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4665-95.                    Filed July 21, 1997.


<u>Robert S. Grodberg</u>, for petitioners.

<u>Christopher W. Schoen</u>, for respondent.


MEMORANDUM OPINION


HAMBLEN, <u>Judge</u>:  Respondent determined a deficiency in
petitioners' Federal income tax for taxable year 1985 in the
amount of $73,068.  By amendment to answer, respondent asserted
an increased deficiency in the amount of $81,211.  Unless
otherwise indicated, all section references are to the Internal

Revenue Code as in effect for the year at issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions by the parties, the sole issue is whether respondent correctly calculated petitioners' deficiency for taxable year 1985. This case was submitted without a trial pursuant to Rule 122. The facts related herein were either stipulated or derived from statements of various individuals that the parties stipulated could be considered in this proceeding.

## Background

Petitioners resided in Brookline, Massachusetts, at the time they filed the petition herein. Petitioners timely filed their 1985 joint Federal income tax return. On audit in 1988, respondent determined an adjustment in the amount of $16,812 for taxable year 1985. Petitioners agreed to the adjustment and waived restrictions on assessment of the additional tax due.

Petitioners incurred net operating losses (NOL or NOLs) in 1987 and 1988 and reported the losses on their joint Federal income tax returns (Forms 1040) for those years. In December 1990, petitioners filed a Form 1040X, Amended U.S. Individual Income Tax Return, for taxable year 1985, carrying back the NOL arising in taxable year 1988 (first amended return). As a result of the first amended return, petitioners had an overpayment of $97,312. The prior assessment of $16,812, however, was still due. On February 11, 1991, respondent reduced the overpayment by

the assessment plus additions to tax, fees, and accrued interest and issued a refund check.

On October 8, 1991, petitioners filed another Form 1040X for taxable year 1985 (second amended return) and sought to carry back the remainder of the NOL from 1988 and part of their NOL from 1987. Respondent returned the second amended return and advised petitioners that NOLs, arising in different taxable years, must be carried back on separate Forms 1040X.

In response to respondent's letter, Mr. Kevin Wulff, petitioners' accountant, prepared two separate Forms 1040X for 1985. One return carried back part of the NOL from 1987 and reflected an overpayment of $65,937 (third amended return). The other return carried back the NOL from 1988 and increased petitioners' alternative minimum tax by $72,747 (fourth amended return). In addition, Mr. Wulff prepared an amended return for taxable year 1984, carrying back the balance of the NOL arising in 1987 and reflecting an overpayment of $56,956 (fifth amended return).

Petitioners included the overpayments on line 23 (refunds to be received) of the third and fifth amended returns. Neither return included a statement requesting that the overpayments be applied to petitioners' additional liability of $72,747, which was reflected in the fourth amended return. Mr. Wulff, however, prepared a cover letter addressed to respondent indicating his intention to call and request that the overpayments from the

third and fifth amended returns be applied to the additional liability (cover letter).

Mr. Fleishman, the partner supervising Mr. Wulff's work, signed and mailed all three returns to petitioners. Petitioners filed the third and fifth amended returns and a copy of the cover letter with respondent's Atlanta Service Center.

Mr. Wulff called respondent's Atlanta Service Center during November 1991 and again during January 1992. He informed respondent's employee that petitioners did not have the funds to pay the additional liability due with the fourth amended return and requested that the liability be set off by the overpayments.

As a result of the third and fifth amended returns, respondent issued refund checks to petitioners for $65,937 and $56,956, respectively, plus interest. Shortly thereafter, petitioners received and cashed both checks.

Respondent's Atlanta Service Center searched for the fourth amended return but found no record of having received or processed it. Respondent found the filed copy of the third amended return at the Federal Records Center but did not find an envelope or any other evidence of a postmark attached to it. Petitioners do not have a postmark, certified mail receipt, or registered mail receipt to establish that the fourth amended return was actually mailed.

Respondent's Brooklyn office audited the 1987 and 1988 Federal tax returns of the Frederic Clayton Defined Benefit

Pension Plan.  In connection with that audit, petitioners' accountant gave respondent's agent copies of all of petitioners' original and amended tax returns for taxable years 1984 through 1987.

In determining petitioners' 1985 deficiency, respondent increased the deficiency by the refund of $65,937.  Petitioners and respondent timely executed several Consent to Extend Time to Assess Tax (Forms 872) for the taxable years 1987 and 1988, extending the statute of limitation on assessment for both years.

## Discussion

The issue for decision is whether respondent correctly calculated petitioners' 1985 deficiency.  Section 6211(a) defines the term "deficiency" as the amount by which the tax actually imposed exceeds--

> (1) the sum of
>
>> (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus
>>
>> (B) the amounts previously assessed (or collected without assessment) as a deficiency, over--
>
> (2) the amount of rebates, as defined in subsection (b)(2), made.

Section 6211(b)(2) defines a "rebate" as an abatement, credit, refund, or other repayment made on the ground that the tax imposed was less than the amount shown on the return and the

amounts previously assessed or collected without assessment.[1]
Section 6402(a) grants the Commissioner authority to issue
refunds.[2]

Not all refunds are rebates.  See <u>Clark v. United States</u>, 63
F.3d 83 (1st Cir. 1995); <u>O'Bryant v. United States</u>, 49 F.3d 340
(7th Cir. 1995); <u>Groetzinger v. Commissioner</u>, 69 T.C. 309 (1977);
<u>Lesinski v. Commissioner</u>, T.C. Memo. 1997-234; sec. 301.6211-
1(f), Proced. & Admin. Regs.  A rebate refund is issued on the
basis of some substantive recalculation of tax owed.  A nonrebate
refund, however, is issued not because of a determination by the
Commissioner that the tax paid is not owing, but for some other

---

[1]Sec. 6211(b) provides in pertinent part:

    (b) Rules for Application of Subsection (a).--For
purposes of this section--

    *    *    *    *    *    *    *

    (2)  The term "rebate" means so much of an
abatement, credit, refund, or other payment, as
was made on the ground that the tax imposed by
subtitle A  * * * was less than the excess of the
amount specified in subsection (a)(1) over the
rebates previously made.

[2]Sec. 6402(a) provides in pertinent part:

General Rule.--In the case of any overpayment, the
Secretary, within the applicable period of limitations,
may credit the amount of such overpayment, including
any interest allowed thereon, against any liability in
respect of an internal revenue tax on the part of the
person who made the overpayment and shall * * * refund
any balance to such person.

reason such as a mistake made by the Commissioner.  O'Bryant v. United States, supra at 342.

The distinction between rebate and nonrebate refunds is pertinent to what options the Commissioner has available in recovering a refund.  Clark v. United States, supra at 88.  The Commissioner may recover a rebate refund under the deficiency procedures set forth in sections 6211 through 6216.  O'Bryant v. United States, supra at 342.  If the deficiency procedure is employed, the statutory period of limitations of section 6501(a) and (h)[3] is applicable.

The Commissioner, however, may recover a nonrebate refund only under section 7405[4] or under administrative collection procedures if those are available.  Clark v. United States, supra at 88.  Section 7405(b) authorizes the United States to recover erroneous nonrebate refunds pursuant to a civil suit, but such a

---

[3]Sec. 6501(h) provides in pertinent part:

In the case of a deficiency attributable to the application to the taxpayer of a net operating loss carryback * * *, such deficiency may be assessed at any time before the expiration of the period within which a deficiency for the taxable year of the net operating loss * * * which results in such carryback may be assessed.

[4]Sec. 7405(b) provides as follows:

Refunds Otherwise Erroneous.--Any portion of a tax imposed by this title which has been erroneously refunded (if such refund would not be considered as erroneous under section 6514) may be recovered by civil action brought in the name of the United States.

suit ordinarily must be filed within 2 years after the making of the refund.  Sec. 6532(b).[5]

Neither party disputes the following facts relating to taxable year 1985:  Petitioners' actual tax liability is $185,097;[6] the amount of tax due shown on petitioners' 1985 Federal income tax return (Form 1040) was $250,323; respondent determined an additional adjustment in the amount of $16,812; and petitioners received a refund of $97,312.  Finally, the parties also agree that respondent never assessed the additional liability of $72,747 shown on the fourth amended return and that petitioners owe the above amount but did not remit a payment.

Petitioners claim that there was no overpayment for taxable year 1985 and that the refund of $65,937 is a nonrebate refund. Respondent, however, having accepted the third amended tax return and issued a refund based upon the overpayment reflected therein,

---

[5]Sec. 6532(b) provides as follows:

Suits by United States for Recovery of Erroneous Refunds.--Recovery of an erroneous refund by suit under section 7405 shall be allowed only if such suit is begun within 2 years after the making of such refund, except that such suit may be brought at any time within 5 years from the making of the refund if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact.

[6]We granted respondent's motion for leave to file an amendment to answer out of time.  By this motion, respondent revised petitioners' income tax liability and deficiency to $185,097 and $81,211, respectively.

argues the payment is a rebate refund, subject to recovery by the deficiency procedures.

We must determine the basis upon which respondent issued the refund of $65,937 in the instant case. The answer to this question depends upon what that payment represents. If the payment is a refund related to the recalculation of petitioners' 1985 tax liability, then it constitutes a rebate. If the payment, however, is unrelated to a recalculation of their tax liability, then it is properly characterized as a nonrebate refund. Clark v. United States, supra; O'Bryant v. United States, supra; Groetzinger v. Commissioner, supra at 315 (1977). Ultimately, we agree with respondent. As we discuss below, the refund of $65,937 is a rebate within the meaning of section 6211(b)(2) because it is based on a recalculation of petitioners' tax liability. Accordingly, the refund is subject to the deficiency regime of sections 6211 through 6216.

Respondent's determination is presumed correct, and petitioners bear the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Petitioners argue that respondent did not have the authority, pursuant to section 6402(a), to issue the refund of $65,937 because petitioners did not have an overpayment in taxable year 1985 when all of their tax liabilities and overpayments for the year are considered. Petitioners' argument assumes that respondent must view all transactions together in determining whether an overpayment

exists, for purposes of section 6402(a), and that the fourth amended return was properly mailed, creating a presumption of delivery.

We need not address whether respondent must treat the third and fourth amended returns as filed concurrently for purposes of determining whether they had an overpayment pursuant to section 6402(a). We are not convinced that Mr. Clayton properly mailed the fourth amended return. In the instant case, there can be no presumption of delivery because of the absence of credible proof of mailing. Leather v. Commissioner, T.C. Memo. 1991-534. Proof of mailing requires some proof that the return was placed in an envelope that was properly addressed, stamped, postmarked, and placed in the mail. See Hiner v. Commissioner, T.C. Memo. 1993-608.

The only direct evidence introduced by petitioners is Mr. Clayton's self-serving statement that he properly addressed, stamped, and mailed the third, fourth, and fifth amended returns. A trier of fact is not bound to accept the self-serving testimony of the parties in a case. United States v. Jimenez-Perez, 869 F.2d 9, 12 (1st Cir. 1989). Mr. Clayton did not supply details to corroborate the mailings. For example, he could not remember how many envelopes he used to mail the returns or how much postage was affixed. Evidence of habit is not sufficient to satisfy petitioners' burden of proof. See Hiner v. Commissioner, supra. The statement of Mr. Wulff, petitioners' accountant,

likewise, does not help petitioners in any material respect. His statement was without direct bearing upon whether Mr. Clayton mailed the fourth amended return.

The documentary evidence is also unpersuasive. Petitioners produced a cover letter written by Mr. Wulff, which was attached to the third and fifth amended returns. This letter offers very limited support because Mr. Wulff did not mail the letter to respondent but to petitioners.

Petitioners, in this case, have not produced credible evidence that the fourth amended return was timely mailed and postmarked. The evidence is simply insufficient to satisfy petitioners' burden of proof regarding the mailing of the fourth amended return. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Without the proper filing of the fourth amended return, petitioners had an overpayment of $65,937 for taxable year 1985.

Petitioners further argue respondent was obligated to determine petitioners' correct tax liability when determining a refund or credit. In support, petitioners rely upon Lewis v. Reynolds, 284 U.S. 281 (1932), and Rev. Rul. 81-87, 1981-1 C.B. 580. In Lewis, the Supreme Court held that a taxpayer is entitled to a refund only if he has "overpaid" his tax. Although the statutes authorizing refunds do not specifically empower the Commissioner to reaudit a return whenever repayment is claimed, authority to do so is necessarily implied. An overpayment must result before refund is authorized. Although the statute of

limitations may have barred the assessment and collection of any additional sum, it does not obviate the right of the United States to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded. Id. at 283.

Rev. Rul. 81-87 merely restates the holding in Lewis v. Reynolds, supra. Angle v. United States, 996 F.2d 252, 255-256 (10th Cir. 1993). Rev. Rul. 81-87 provides that when the taxpayers timely file a claim that would reduce their taxes, the IRS, in determining whether they are to receive a credit or refund will consider all proper adjustments, whether or not time-barred. It makes clear, however, that the claimants may recover only on the claim, which they filed before expiration of the period of limitations, and then only to the extent to which they would be entitled to a refund if their tax liability were properly calculated without regard to the statute of limitations.

Neither Lewis v. Reynolds, supra, nor Rev. Rul. 81-87, supra, helps petitioners here. The additional tax and the overpayment resulted from carrying back NOLs arising in different years. The Commissioner cannot be expected to ferret out all conceivable upward adjustments to a taxpayer's liability when making a refund determination. See Angle v. United States, supra at 256; Herrington v. United States, 416 F.2d 1029, 1032 (10th Cir. 1969). Although the Supreme Court concluded in Lewis that respondent has an implied power to audit a taxpayer's return when

a refund is claimed, such power does not create an obligation of respondent to do so. See <u>United States v. Memphis Cotton Oil Co.</u>, 288 U.S. 62, 70-71 (1933); <u>Taranto v. Commissioner</u>, T.C. Memo. 1975-372. We are convinced that section 6402(a) does not require respondent to use his resources in such a matter before issuing a refund. Cf. <u>Clark v. Commissioner</u>, 158 F.2d 851 (6th Cir. 1946), affg. a Memorandum Opinion of this Court. Viewing the facts in total, we are satisfied that respondent was justified in issuing a refund in the amount of $65,937.

Alternatively, petitioners argue that there was no overpayment in taxable year 1985 because respondent should have treated the additional tax due as part of the amount "shown as the tax by the taxpayer upon his return" for purposes of section 6211(a)(1)(A). Petitioners contend that the cover letters and Mr. Wulff's telephone conversations with respondent's employees were sufficient to alert respondent as to their additional liability. In other words, petitioners argue that the additional tax, which they acknowledge was due notwithstanding their failure to file a return reporting the tax, qualifies as an "amount shown as the tax by the taxpayer upon his return" within the meaning of section 6211(a)(1)(A). We disagree.

Section 6211 defines a deficiency as the amount by which the correct tax due exceeds the sum of: (1) The amount shown by the taxpayer as the tax due on his return if a return was made and (2) amounts previously assessed or collected without assessment.

Sec. 6211(a)(1)(A) and (B). It is apparent from the language of section 6211(a)(1)(A) that at a minimum the taxpayer must file a return for the amount of tax reflected therein to reduce the taxpayer's deficiency.

Every document a taxpayer files containing computations, and tax information is not a return. Friedman v. Commissioner, 97 T.C. 606, 610 (1991); Thompson v. Commissioner, 78 T.C. 558, 562 (1982); Reiff v. Commissioner, 77 T.C. 1169 (1981). For example, to qualify as a return, the Form 1040 must state specifically the amounts of gross income and the deductions and credits claimed. Thompson v. Commissioner, supra. The same rationale regarding Form 1040 is equally applicable to an amended tax return.

After the due date of the original return, an amended return constitutes a supplement or amendment to the original Form 1040. See Zellerbach Paper Co. v. Helvering, 293 U.S. 172 (1934). Accordingly, to qualify as an amended return, the document must supply sufficient data from which the Commissioner can compute and assess the taxpayers' new tax liability. At a minimum, such data should include the nature and amount of the change. In our self-reporting tax system, the Commissioner should not be forced to accept as a return a document which plainly is not intended to give the required information. United States v. Moore, 627 F.2d 830, 835 (7th Cir. 1980); McCaskill v. Commissioner, 77 T.C. 689, 698-699 (1981). Neither the cover letter filed by petitioners nor the conversations between petitioners' accountant and

respondent's employees explained what item petitioners were changing or the reason for the change.  We find that neither constituted an amended return.

To support their argument, petitioners rely upon section 6103(b) and section 9781.348.2 of 6 Administration, Internal Revenue Manual (CCH), 28,689-5 through 28,690 (I.R.M. or manual).

Section 6103(b) provides in pertinent part:

Definitions.--For purposes of this section--

(1) Return.--The term "return" means any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed.

*     *     *     *     *     *     *

(2) Return Information.-- The term "return information" means

(A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition or offense, and * * * be associated with or otherwise identify, directly or indirectly, a particular taxpayer.

Section 9781.348.2 of the manual provides:

　　(1) A "return" is any tax return or information return, schedules, and attachments thereto, including any amendment or supplement, which is required or permitted to be filed and is in fact filed by a taxpayer with the Secretary of the Treasury. Examples include:

　　　　(a) Forms 1040, Schedules A, B, C and Forms W-2.

　　　　(b) A taxpayer has filed an income tax return and subsequently submits a letter to IRS explaining an item on the original return. The letter is within the definition of return.

　　(2) The statutory definition of "return information" is very broad. It includes any information other than a taxpayer's return itself which IRS has obtained from any source or developed through any means which relates to the potential liability of any person under the Code for any tax, penalty, interest, fine, forfeiture or other imposition or offense.

Petitioners' reliance on the above provisions is misplaced in the context of the present case. The intent of both section 6103(b)(2) and section 9781.348.2 of the manual is to require respondent's agents to maintain the confidentiality of taxpayers' information. By its own terms, section 6103(b)(1) limits its definition of the term "return". It is defined only "For purposes of this section". Sec. 6103(b)(1). Moreover, section 9781.348.2 of the manual defines the terms "return" and "return information" for purposes of the rule in section 9781.348.1, which requires special agents in criminal tax investigations to treat return information as confidential. I.R.M., supra sec. 9781.348.1 at 28,689-5. Although we do not see any inconsistency

between the definition of "return" as found in sections 6103(b) of the Code and 9781.348.2 of the manual and "return" as used in section 6211 or defined in section 6213(g)(1), we also do not see how those definitions help petitioners.  Consequently, we conclude that the cover letter and the conversations between their accountant and respondent's employees do not constitute a return.

Respondent issued a refund to petitioners for the amount requested on the third amended return.  Accordingly, we hold that there was no erroneous action by respondent and that the refund was based on a recalculation of petitioners' tax liability and that the refund of $65,937 does come within the statutory framework of section 6211 for purposes of calculating petitioners' 1985 tax deficiency.  We have considered all of the other arguments made by petitioners and, to the extent we have not addressed them, find them to be without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.